UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
UNITED STATES OF AMERICA,      )
                               )
       v.                      )    CRIMINAL NO.
                               )    00-10383-PBS
PAUL R. ARGUIN,                )
                               )
             Defendant.        )
_____)
```

### MEMORANDUM AND ORDER

July 26, 2010

Saris, U.S.D.J.

### I.  INTRODUCTION

Defendant Paul Arguin seeks an order declaring that his $3.2 million restitution obligation has been satisfied.  Arguin argues that the government has been compensated fully for its loss following a $15 million settlement with his former employer in a related action.  After hearing, the Court **ALLOWS** the Motion in part and **DENIES** it in part.

### II.  BACKGROUND

**A.  Restitution Under the Plea Agreement**

Arguin and his co-defendants, Victor Garber, Lisa Arguin, Greenleaf Technology Associates, Inc., and Merrimac Systems Corporation, were charged in a forty-nine count indictment with conspiracy to defraud the United States Air Force.[1]  The

---

[1] Specifically, the indictment included charges for Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371 (Count 1); Wire Fraud and Aiding and Abetting, in

indictment alleged multiple schemes through which Arguin and Garber used their positions as technology consultants to the Air Force employed by defense contractor Dynamics Research Corporation ("DRC") to divert government procurement funds for personal use.  "Arguin would advise the Air Force to purchase goods and services from third-party contractors and then, in turn, receive payment from these contractors in exchange for providing some or all of the goods and services himself."  <u>United States v. Dynamics Res. Corp.</u>, No. 03-cv-11965-NG, 2008 WL 886035, at *1 (D. Mass. Mar. 31, 2008) (discussing the same facts in context of a subsequent civil suit by the United States against DRC).  These arrangements resulted in substantial overcharges to the government for computer installation services and "clone" memory units substituted for brand name products, as well as charges for goods and services that the government never received.  <u>Id.</u>

Arguin ultimately pled guilty to twenty-four counts of the indictment, and the Court sentenced him to sixty months incarceration followed by twenty-four months of supervised

---

violation of 18 U.S.C. §§ 1343, 1346, and 2 (Counts 2-19); Theft and Conversion of Public Property, in violation of 18 U.S.C. § 641 (Count 20); Conspiracy to Commit Money Laundering Offenses, in violation of 18 U.S.C. § 1956(h) (Count 21); Money Laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1957 (Counts 22-43); Conspiracy to Obstruct Justice and Tamper with Witnesses, in violation of 18 U.S.C. § 371 (Count 44); and Witness Tampering and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(b)(1), 1512(b)(2)(B), and 2 (Counts 45-49).

release, as well as imposing a $2,400 special assessment and $3.2
million restitution obligation.  (Docket No. 145.)  That
restitution order was based on the findings of the Presentence
Report ("PSR"), which indicated that the government suffered a
loss of $9,518,182.78, from which Arguin received approximately
$3.2 million in profits.[2]  (PSR ¶¶ 45-46, 75-76; Sentencing Hr'g
Tr. 16, Mar. 8, 2002.)  Defendant did not object to this
calculation of loss amount, although he took the position that
the actual direct financial loss to the government on account of
his crimes was zero.  (PSR Objection #7.)

In addition to agreeing to a recommendation on his prison
sentence, fine, and restitution payment, Arguin's plea agreement
states that he "will not seek any reduction of any of the
financial payments described in this agreement, nor seek the
return of any funds paid pursuant to this agreement on the basis
of any monies recovered by the government from any other person
or entity."  (Docket No. 109 at 8.)  The Court apportioned
liability among the defendants, including the $3.2 million
apportioned to Arguin, on the basis of that recommendation and
the facts indicated in the PSR.  See 18 U.S.C. § 3664(h)
(permitting the court to "apportion liability among the

---

[2] The PSR calculated that the total loss stemming from
Arguin and his co-defendants' unlawful activity was
$10,035,373.91, but discounted $517,191.13 as appropriate profits
to one party involved, arriving at the final figure of
$9,518,182.78.  (PSR ¶ 76.)

defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.").

Pursuant to his plea agreement, Arguin agreed that certain funds held in his or his ex-wife and co-defendant, Lisa Arguin's, name would be used to pay restitution.  (<u>See</u> Docket No. 147.) Those funds, along with proceeds from sales of his other assets, were transferred to the government in partial satisfaction of his restitution obligation.  Those assets include several bank and investment accounts, Arguin's car, boat, and second home, and a portion of his monthly income during his incarceration, subsequent stay in a halfway house, and current employment. (<u>Id.</u>; <u>see also</u> Def.'s Br., Ex. D.)  To date, Arguin has repaid between $300,000 and $400,000 of his restitution obligation.  In addition, the Clerk of Court currently is holding for distribution to the government $403,222.49 of Arguin's, including $150,000 from the equity refinancing of his former marital home in Amesbury, Massachusetts, and $253,222.49 seized from six of his additional investment accounts.  (<u>See</u> Def.'s Br., Ex. E.) Pursuant to this Court's order of November 30, 2009, the Clerk's Office is holding that money in escrow pending the resolution of this motion.  (Docket No. 205.)

B.   <u>**The Civil Settlement with Arguin's Employer**</u>

The present motion arises from the settlement of a related civil action brought by the government against Arguin's former

employer, DRC.  <u>United States v. Dynamics Res. Corp.</u>, No. 03-CV-
11965-NG (the "DRC litigation").  There, the government sought
damages against DRC on the same facts at issue here under the
False Claims Act, 31 U.S.C. §§ 3729-3733, the Anti-Kickback Act
(the "AKA"), 41 U.S.C. § 51-58, and common law breach of
contract.  The government's monetary claim against DRC under the
False Claims Act was "$30,106,121.73 (treble damages), plus
penalties of $5,000.00-$11,000.00 for each of at least 84 false
claims, minus $6,230,000.00 in recoveries already made from other
parties[,]" for a total between $24,296,121.73 and
$24,800,121.73.  <u>Dynamics Res. Corp.</u>, 2008 WL 886035, at *1 &
n.1; <u>see also</u> Plaintiff's Memorandum in Support of Motion for
Summary Judgment at 33, United States v. Dynamics Res. Corp., No.
03-11965 (D. Mass. Mar. 31, 2008) (requesting this amount of
damages as the sole measure of relief requested in the conclusion
of its brief).[3]  The government alleged that it suffered
$10,035,373.91 in single damages, the same figure included in the
PSR (prior to the deduction of $517,191.13 in authorized

---

[3] The government also maintained that DRC was liable under
the AKA "for civil penalties and double damages totalling
$19,791,547.82, and for $10,035,373.91 for breach of contract."
<u>Dynamics Res. Corp.</u>, 2008 WL 886035, at *1.  However, in its
summary judgment briefing, the government emphasized that it
raised those claims only as alternate theories of recovery, not
in addition to its primary claim under the FCA.  Plaintiff's
Memorandum in Support of Motion for Summary Judgment at 32 &
nn.14, 15, Dynamics Res. Corp., No. 03-11965 ("The United States
asks that the Court enter judgment on each [theory], but the
recoveries would be in the alternative, not cumulative.").

profits).[4]  Plaintiff's Memorandum in Support of Motion for
Summary Judgment at 30, Dynamics Res. Corp., No. 03-11965.

In opposing the present motion, the government claims that
the ultimate settlement of the DRC litigation "does not even
cover the $43 million in potential single damages at issue in
that case, let alone the multiple damages and penalties and other
claims that the United States is entitled to recover . . . ."
(Gov't's Br. at 1.)  More specifically, the government claims
that "[t]he single damages for false claims set forth in the
United States' Statement of Undisputed Facts was a total of
$43,658,585, of which $10.1 million was for false claims caused
by DRC and its employees (including Arguin) but submitted by
others, and $23,585,685 was for false billings submitted by DRC."
(Id. at 3.)  Labor billed by Arguin, Garber, and two others
amounted to at least $877,369.81.  (Gov't's Br., Ex. A at 25.)

The government likely made an arithmetic error in its
brief – the actual numbers are $10,035,373.91 and $23,585,685.09,
respectively, for a total of $33,621,059.  (Id. at 24-25.)  Even
when this error is corrected, the amount and significance of
these figures are confusing.  The briefing in the DRC litigation

---

[4] The government indicated that this amount did not include
damages resulting from services provided by DRC that were tainted
by conflicts of interest, which it did not press but reserved the
right to seek "if summary judgment is not granted to the full
extent authorized by the FCA."  Plaintiff's Memorandum in Support
of Motion for Summary Judgment at 30 n.12, Dynamics Res. Corp.,
No. 03-11965.

refers to these numbers as the total amounts paid to DRC and
other contractors "pursuant to Delivery Orders under [the
relevant contracts] that were under the direction of Arguin
and/or Garber during the pendency of their criminal scheme (i.e.,
from November 1996 to the end of 2000)."  (Id. at 25.)  DRC hotly
disputed these figures in its summary judgment filings, arguing
that the amounts paid under the contracts were not "relevant to
the calculation of damages under any of the theories advanced by
the Government" and contesting the government's numbers
themselves as covering a longer period and greater scope of
activity than was actually relevant.  Defendant's Counter
Statement of Material Facts at 51-52, Dynamics Res. Corp., No.
03-11965; see also id. at 52 (disputing the relevance of the
amount billed directly for labor delivery hours of Arguin to the
government's damages calculation).  Notably, the government did
not mention these figures at all in its summary judgment brief or
explain their rationale.

The Court (Gertner, J.), acknowledging the $10,035,373.91
single damages number actually advanced by the government,
allowed the government's motion for summary judgment with respect
to FCA liability, but held that there were material factual
issues as to the value of the goods and services received by the
government.  Dynamics Res. Corp., 2008 WL 886035, at *21.  The
case resolved with a settlement under which DRC admitted only

that it breached its Air Force contracts and paid the government
$15 million plus interest.  That agreement stated,
"Notwithstanding any term of this Agreement, specifically
reserved and excluded from the scope and terms of this Agreement
. . . are the . . . claims of the United States [as to] . . .
[a]ny liability of Paul Arguin or Victor Garber, including any
obligation to pay criminal restitution."  (Gov't's Br., Ex. C ¶
3.)

A government press release announcing the settlement
emphasized that "[t]he $15 million recovered in the settlement
agreement with the company is more than the restitution figures
from the criminal cases.  The United States' total recovery in
these actions exceeds by approximately $10 million the losses it
estimated as a result of the misconduct."  (Def.'s Br., Ex. G.)
Arguin now claims that his restitution obligation should be
deemed satisfied, since the government has collected at least
$21.2 million - the $15 million settlement with DRC (excluding
interest) plus the $6.23 million previously recovered from Arguin
and other parties – from all sources with regard to the criminal
conduct of Arguin and his co-defendants.

### III.  DISCUSSION

The Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§
3663A-3664, states, "Any amount paid to a victim under an order
of restitution shall be reduced by any amount later recovered as

-8-

compensatory damages for the same loss by the victim in . . . any
Federal civil proceeding . . . ." 18 U.S.C. § 3664(j)(2).
Arguin contends that, since the government has recovered more
than twice the amount of its loss, his restitution should be
deemed satisfied and the money held in escrow returned to him.
The government argues that its recovery against DRC was not for
"the same loss," entitling Arguin to no offset.

The purpose of Section 3664(j)(2) "is to prevent double
recovery by a victim." United States v. Stanley, 309 F.3d 611,
613 (9th Cir. 2002). If the victim later recovers civil damages
for the same loss, the court subtracts that sum from the victim's
loss to determine the defendant's remaining restitution. Id.;
see also United States v. Nucci, 364 F.3d 419, 423 (2d Cir. 2004)
(holding that victim may not receive double recovery in a
criminal context); United States v. Dawson, 250 F.3d 1048, 1050
(7th Cir. 2001) (concluding that, in the criminal context, a
victim should not receive more restitution than necessary to make
it whole); cf. United States v. Leon-Delfis, 203 F.3d 103, 116
(1st Cir. 2000) (noting in a separate context that money that
might be paid to the government depending on the outcome of
subsequent litigation may reduce defendant's restitution). The
burden of establishing double payment is on the defendant.
United States v. Parsons, 141 F.3d 386, 393 (1st Cir. 1998); see
also 18 U.S.C. § 3664(e) ("The burden of demonstrating [by a
preponderance of the evidence] such other matters as the court

-9-

deems appropriate shall be upon the party designated by the court as justice requires."); United States v. Sheinbaum, 136 F.3d 443, 449 (5th Cir. 1998) (reasoning that the burden of proving double recovery should fall on the defendant).

"In some cases, the nature of a settlement might show that the victim has been compensated for the loss." Parsons, 141 F.3d at 393. However, whether to offset a settlement agreement against a restitution agreement sometimes is a judgment call. In Parsons, for example, the First Circuit held that the District Court properly refused to offset a defendant's civil settlement with the FDIC against the $1.6 million in losses for which a criminal court ordered him to pay restitution because the civil settlement had satisfied a number of larger claims in addition to the one for which the defendant was paying restitution. Id.; see also United States v. All Star Indus., 962 F.2d 465 (5th Cir. 1992) (denying an offset where a civil settlement encompassed a broader class of victims and behavior), abrogated on other grounds by United States v. Calverley, 37 F.3d 160 (5th Cir. 1994) (en banc).

The first question to be resolved, then, is what amount of damages is necessary to compensate the government for a False Claims Act violation. Under the FCA, damages are calculated by multiplying the amount of the government's original loss and then deducting the amount of the compensatory payments. See United States v. Bornstein, 423 U.S. 303, 314-17 (1976) (discussing the

-10-

FCA provision that, at the time, only doubled damages).  The

Supreme Court explained that

> this method of computation comports with the
> congressional judgment that double damages are
> necessary to compensate the Government completely for
> the costs, delays and inconveniences occasioned by
> fraudulent claims.  Second, the rule that damages
> should be doubled prior to any deductions fixes the
> liability of the defrauder without reference to the
> adventitious actions of other persons.

Id. (footnote omitted); see also Cook County v. United States ex

rel. Chandler, 538 U.S. 119, 131 (2003) (noting the importance of

multiple damages in light of the fact that "[t]he FCA has no

separate provision for prejudgment interest, which is usually

thought essential to compensation . . . .").  Even if one accepts

the measure of single damages advanced by the government in the

DRC case rather than that indicated on the PSR, the government is

owed only $20,070,747.82 in double damages, less approximately

$6.23 million already recovered from other sources, leaving

$13,840,747.82.  It received $15 million plus interest in the

settlement with DRC.  This amount fully compensates for the FCA

loss.

The government contends that the settlement does not

compensate it fully because it was entitled to treble damages and

penalties under the FCA in the DRC litigation.  While the Supreme

Court has recognized that doubling damages has a compensatory

function, Bornstein, 423 U.S. at 314-17, it has held that treble

damages can serve both compensatory and punitive purposes,

<u>Chandler</u>, 538 U.S. at 130.  Nothing in the record here suggests that treble damages were necessary to compensate the government for its loss.  However, the government arguably is allowed to allocate some of its settlement in the DRC litigation to the trebling and the penalties.

The government's other contention is that the $15 million plus interest should not nullify Arguin's restitution, since that settlement resolved claims beyond those at issue in this case. While the government points now to $33,621,059 in alleged false billings raised in the DRC litigation as unresolved single damages, the accuracy of those numbers is unclear on the record before the Court.  Judge Gertner did not mention this theory of damages in her lengthy opinion and the parties' briefs in that case, including the government's, did not explain them or seem to press a claim for these additional damages.  If there had been a viable alternative theory of damages, the government could certainly settle the claim.  However, based on this record, it is unlikely the government relied on those monies for its theory of damages in the DRC litigation.

Under the circumstances, the Court exercises its discretion and reduces the restitution obligation.  In light of the language in the plea agreement, the Court **DENIES** the request to release the monies in the escrow account because the government is allowed to allocate at least some of the settlement in the DRC

litigation to the penalty component of the FCA settlement. However, in light of the huge settlement between the government and DRC, the wording of the press release, and the lack of clarity with respect to the government's alternative theory of damages, the Court finds that Mr. Arguin has no future restitution obligations.

### ORDER

Defendant's Motion for an Order deeming his restitution paid and satisfied [Docket No. 202] is **ALLOWED** after the funds in the escrow account are paid to the government.  The Court **DENIES** the request to distribute the funds held in escrow to the defendant.


 /s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge